STATE OF MAINE

YORK, ss.

PENNY LIGHTFOOT, p/n/f/o
CODY LIGHTFOOT,

Plaintiff

v.

M.S.A.D. #35, et al.,

Defendants

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-01-015
GAB-YOR- 6/21/2002

**DECISION AND ORDER**

DONALD L. GARBRECHT
LAW LIBRARY

JUN 21 2002

Following hearing the Defendants' Motion for Summary Judgment is

granted, as follows.

FACTUAL BACKGROUND

On February 1, 1999, Plaintiff Cody Lightfoot (Lightfoot) was a member of the

Marshwood High School Varsity Wrestling Team and attended a practice

supervised by his wrestling coach, Defendant Matthew Rix (Rix). DSMF ¶ 3, 7. On

this day, Rix directed the wrestling team to run competitive relay races as part of a

warm-up. DSMF ¶ 15, 25. The races were held in the Marshwood High School

hallways and corridors. Complaint ¶ 8. The wrestling team divided into two

squads, and one member from each squad raced in relay fashion. DSMF ¶ 16.

Lightfoot was in the first pair of runners to compete that day. DSMF ¶ 17. While

racing, Lightfoot and his competitor approached a fire door on the second floor that

was narrower than the corridor. DSMF ¶ 20. The opening consisted of two doors

with pains of reinforced glass on either side of the door opening. DSMF ¶ 20.

1

As the wrestlers approached the fire door, they jockeyed for position. DSMF ¶ 21. As a result, Lightfoot veered to his left and put his left arm out to stop his momentum as he approached the fire door. DSMF ¶ 22. Lightfoot put his left arm though the glass window to the left of the fire door and suffered severe injuries and lacerations to his left arm. DSMF ¶ 24.

At the time of the incident, Defendant Thomas Ward (Ward) was the Principal of Marshwood High School, and he was not present at this wrestling practice. DSMF ¶ 26. Marshwood High School is administered by Defendant Maine School Administrative District #35 (M.S.A.D. #35). DSMF ¶ 2.

Plaintiff filed a complaint asserting that Defendants Rix, Ward, and M.S.A.D. #35 were negligent in permitting the wrestling team to participate in competitive races within the corridors of the Marshwood High School building.

Defendants subsequently filed a Motion for Summary Judgment averring that Rix and Ward are entitled to discretionary function immunity in accordance with 14 M.S.R.A. §8111(1)(C), and M.S.A.D. #35 is immune from such suit pursuant to the Maine Tort Claims Act, 14 M.S.R.A. § 8103(1).

## DISCUSSION

The parties do not dispute the facts of this case. The dispositive issues regarding Defendants' Motion for Summary Judgment are whether Rix and Ward are protected by discretionary function immunity pursuant to 14 M.R.S.A §8111(1)(C) and whether M.S.A.D. #35 is protected by governmental immunity pursuant to 14 M.S.R.A §8103(1).

1.    Defendant Rix and Discretionary Function Immunity.

The Maine Tort Claims Act provides absolute immunity from personal civil liability to employees of governmental entities who are "performing or failing to perform any discretionary function or duty." 14 M.R.S.A §8111(1)(C). Further, it states that absolute immunity "shall be available to all governmental employees...who are required to exercise judgment or discretion in performing their public duties." 14 M.R.S.A. §8111(1). As a government employee who exercises judgment or discretion in performing his public duties, the clear language of 14 M.R.S.A §8111(1) provides that Rix is at least eligible to claim immunity.

The Maine Law Court in *Darling v. Augusta Mental Health Institute*, 535 A2d. 421, 426 (ME.1987) adopted a four-part test to determine whether an employee's actions were subject to discretionary function immunity.[FN1] Applying the four-part test the Law Court articulated in *Darling*, Rix satisfies the test: (1) Rix was involved in furthering the basic governmental policy, program, or objective of enhancing public education through a sanctioned interscholastic athletic program; (2) the training exercise in question was directly related to the furtherance of the school's objective; (3) the act in question was a component of Rix's training method and resulted from his judgment and expertise in furthering the school's policy; and (4) Rix acted under the school's authority to conduct athletic programs for its students.

---

[FN1] Those four factors are as follows:
(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective?
(2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective?
(3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?
(4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

3

The Plaintiff argues that the present case should be included in a category of cases in which the actor is not acting pursuant to a specific statute and where the actor is not involved in the "exercise of basic policy evaluation, judgment, and expertise." In *Adriance v. Town of Standish*, 687 A2d. 238, 241 (Me.1996), the Law Court quotes *Prosser and Keeton on the Law of Torts* § 131, at 1065 (5th ed.1984), "where the questioned conduct 'has little or no purely governmental content but instead resembles decisions or activities carried on by people generally, there is an objective standard for judgment by the courts' and the doctrine of discretionary immunity does not bar the action." In *Adriance*, a municipal transfer-station attendant left open a safety gate at the transfer station, and a patron alleged a resulting injury. The Law Court determined that the attendant's actions or failure to act with regard to the operation of a safety gate was "typical of day-to-day decisions generally made by all persons and cannot be said to be rooted in basic governmental policy." *Adriance v. Town of Standish*, 687 A2d. at 241. Therefore, the Court determined that the attendant in *Adriance* did not enjoy discretionary immunity.

An important distinction exists between *Adriance* and the present case, however. The attendant's act, or failure to act, in *Adriance* was ancillary to the attendant's primary functions. See *Adriance v. Town of Standish*, 687 A2d. at 239. In the present case, Rix is acting in direct furtherance of his primary duties as a governmental employee and, therefore, in furtherance of basic government policy.

In *Carroll v. City of Portland*, 736 A.2d 279, 280 (Me.1999), when vacating an order of summary judgment, the Law Court decided that a question of fact remained where a police officer had transcribed a list of names incorrectly and, as a result, falsely implicated a person in a crime. If the act was purely ministerial and did not involve the exercise of personal judgment or choice then the immunity

4

defense does not apply. *Carroll v. City of Portland*, 736 A.2d at 283. The present case can be distinguished from *Carroll* in that Rix's actions were not "ministerial" within the meaning of *Carroll*. Unlike the simple act of transcribing names, Rix was involved in an activity which required the exercise of personal judgment and choice. These included how to design the most effective practice sessions given the practice space available, deciding which drills to run and supervising the performance of these drills.

Therefore, I find that Rix was involved in a discretionary activity in the furtherance of his employment by the school district and is entitled to discretionary immunity.

2.     Defendant Ward and Discretionary Function Immunity.

Ward, as the Principal of the school, was Rix's supervisor. The Law Court in *Miller v. Szelenyi*, 546 A2d. 1013, 1021 (Me.1988) wrote that "proper supervision and control of all the (government) employees...required the exercise of discretion." Ward's duties as the school's Principal and Rix's supervisor place him under the umbrella of discretionary immunity, as well.

3.     Defendant M.S.A.D. #35 and Public Building Exception to Governmental Immunity.

Under 14 M.S.R.A §8104-A(2), "a governmental entity is liable for its negligent acts or omissions in the construction, operation or maintenance of any public building or the appurtenances to any public building." The Plaintiff contends that the term "operation" should include Rix's use of the school building for athletic training, subjecting M.S.A.D. #35 to liability.

The Court strictly construes the exceptions to governmental immunity provided for in the 14 M.S.R.A. §8104-A. See *Petillo v. City of Portland*, 657 A2d. 325, 327 (Me.1995).

The Defendant points to *Darling v. Augusta Mental Health Institute*, 535 A2d. 421 (Me.1987), *Jensen v. Augusta Mental Health Institute*, 574 A2d. 885 (Me.1999), and *ABT & A Company, Inc. v. State*, 644 A2d. 460 (Me.1994) to illustrate the Law Court's unwillingness to find "operation" as it is used in 14 M.S.A.D. §8104-A(2) to encompass the supervision of state employees or people under the state's care. Generally, *Darling, Jensen*, and *ABT & A Co.* involve harms resulting from ineffective supervision of people in the state's care. While the present case involves supervision, it is somewhat complicated by the fact that, unlike *Darling, Jensen*, and *ABT & A Co.*, the government facilities in question were used in accordance with the governmental actor's directions. *See Id.* However, the Law Court expressed its view clearly in *ABT & A Co., Inc. v. State*, 644 A2d. at 460 when it wrote that the public building exception "applied only to the State's acts in the care or operation of its buildings and property, not to the State's care or supervision of people in its charge."

The Law Court underscored its narrow interpretation of the "exceptions clause" in *Lynch v. Town of Kittery*, 677 A2d. 524 (Me.1996). In *Lynch*, a student was assaulted in a school building as a result of the school's failure to properly lock a door. *Lynch* at 524-25. The Law Court decided that the school's failure to lock the door was a function of the building's operation. In doing so, the Law Court distinguished *Lynch* from *ABT & A Co., Inc.* by explaining that its focus in *ABT & A* was on the supervision of inmates, while in *Lynch* the Court's focus was on the

operation of the school building. Like *ABT & A Co.* and unlike *Lynch*, the focus of the present case is on the supervision of people and not on the operation of the school building.

This case appears to involve serious harm to a student which, in hindsight, might have been avoided. As unfortunate as those circumstances may be, it is my view that the law provides Defendant M.S.A.D. #35 with governmental immunity and provides Defendants' Rix and Ward with discretionary function immunity.

## ORDER

For the reasons stated above, the Defendants' Motion for Summary Judgment is Granted.

The clerk may incorporate this order in the docket by reference.

Dated:      June 18, 2002

G. Arthur Brennan
Justice, Superior Court

PLAINTIFFS:
JULIAN SWEET ESQ
BERMAN & SIMMONS
PO BOX 961
LEWISTON ME   04243-0961

DEFENDANTS:
JEFFREY EDWARDS ESQ
PRETI FLAHERTY BELIVEAU & PACHIOS
PO BOX 9546
PORTLAND ME   04112-9546

7